FILED
2013 Aug-05  PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| HORACE JEFFREY ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:11-cv-4097-LSC |
| | ) | |
| SOUTHERN | ) | |
| COMMUNICATIONS | ) | |
| SERVICES, INC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

### I.    Introduction

In the above-entitled action, Horace Jeffrey Allen ("Plaintiff") claims his former employer, Southern Communications Services, Inc., doing business as SouthernLINC Wireless ("SouthernLINC"), retaliated against him for filing complaints in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, and the Fair Labor Standards Act of 1938 ("FLSA") when it terminated his employment. Following discovery, SouthernLINC filed a Motion for Summary Judgment that brought about the filing of Motions to Strike by both parties, all of which are fully briefed and ripe for decision.

II.     Facts[1]

SouthernLINC is a company that provides a cellular communications network for use within the United States by its customers, and purchases and resells mobile cellular handsets manufactured by other companies for use over its cellular network. Plaintiff began working for SouthernLINC in 2002 as a Customer Support Representative ("CSR") in the Customer Service Department, and was promoted in 2005 to Customer Support Team Lead ("Team Lead") in the Call Center division. Throughout Plaintiff's employment, there were a total of five Team Leads in the Customer Service Department. Plaintiff reported directly to Technical Customer Support Supervisor Blake Thompson ("Thompson"), and Thompson reported to Customer Support Manager Rance Hardy ("Hardy").

SouthernLINC's employees were afforded several ways to raise complaints about work-related issues. First, an employee could contact management or Human Resources directly. Second, SouthernLINC's employees were required to complete annual Compliance Surveys at the beginning of each year in which they were asked to

---

[1] The facts set out in this opinion are gleaned from the parties' individual submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

disclose, among other things, any discrimination they believed they suffered in the previous year. Third, SouthernLINC employees could file "Concerns" with the Concerns Department if they had issues with discrimination, retaliation, or other unlawful treatment.

In 2006, Plaintiff's wife, who worked at SouthernLINC as an Account Specialist in the company's Customer Accounting Department, was selected for discharge as part of a reduction in force ("RIF"). She was pregnant at the time she was selected, and filed a Concern complaining about discrimination based on her discharge. In Plaintiff's 2006, 2007, and 2008 Compliance Survey responses, he alleged that his wife was terminated based on her pregnancy. Additionally, Plaintiff alleged that he was being retaliated against for his earlier complaints about his wife's termination in his 2007 and 2008 Compliance Survey responses.

Between 2006 and 2009, Plaintiff filed at least six Concerns—all of which were found to be without merit by SouthernLINC. In one Concern, filed on June 24, 2008, he complained that his wife's Concern regarding her termination had been found unsubstantiated. Additionally, he alleged unfair treatment in regards to his time off requests, awards recognition, and performance reviews because of his complaints about his wife's termination.

In the fourth quarter of 2008, Hardy and Human Resources Business Consultant Tiffany Wilder Davis ("Wilder") began looking into a reorganization of the Customer Service Department based on a downturn in its market and a new system called OrderLINC that automated one of the job responsibilities of the CSRs. Around the same time, Plaintiff received a Team Leader of the Quarter Award.

Employees at SouthernLINC receive mid-year performance evaluations and year-end performance evaluations prepared by their direct supervisor. These evaluations rank the employees in four categories: Individual Goals, Individual Business Results, Company Initiatives, and Behaviors. In his 2008 year-end performance evaluation prepared by Thompson, Plaintiff received a rating of "Fully Met" in all four categories; however, Thompson did note that Plaintiff received "constructive feedback to maintain a positive and open to feedback attitude when interacting with supervisors and team leaders." (Doc. 44-5 at 18.)

During a 2008 year-end Group Feedback Session, Customer Support management made the following comments about Plaintiff: "Negative attitude - always on defensive with other [Team Leads] - has impact on CSRs - blows issues out of proportion - had issue with another supervisor in other department." (Doc. 44-8 at 6.) After a tense meeting in March of 2009 with Hardy and Thompson regarding

Plaintiff's attitude, Hardy "indicated [Plaintiff] should not report concerns any longer." (Doc. 44-9 at 1; Pla. Depo. 365:20–366:10.)

In early to mid 2009, Wilder and Hardy decided to eliminate seven CSR positions. Because of the decrease in the workload and the number of CSRs, they also decided it was necessary to eliminate one team lead position.

In July of 2009, Thompson and Wilder worked together to prepare Plaintiff's mid-year performance evaluation. Although Thompson initially gave Plaintiff a rating of "Fully Met" in all four categories, he changed Plaintiff's rating in the "Behaviors" category to "Not Fully Met." (Doc. 44-5 at 39, 48.) In the comments section, Thompson originally wrote "I recommend that [Plaintiff] work closely with Team Leaders and Supervisors when confronting teamwork issues. I recommend that [Plaintiff] engage more verbally with Team Leaders and Supervisors, rather than sending emails. I recommend that [Plaintiff], when sending emails, send facts only. Not Fully Met." (Doc. 44-5 at 39.) However, he later changed his comments to state, "Although [Plaintiff] has a great working relationship with external/internal customers and CSRs, he does not have a strong relationship with peers (Team Leaders) and management. I recommend that he focuses on building stronger and more positive relationships with peers (Team Leaders) and management. [Plaintiff]

should make an effort to initiate more face-to-face conversations, with people, as opposed to conversing through email to avoid miscommunication and ensure that his points and the points of others are being received as intended." (*Id.* at 48.)

During a 2009 mid-year Group Feedback Session, Customer Support management made the following comments about Plaintiff: "over steps boundaries of job description - responds inappropriately & overacts to minor incidents - takes things too personally - discussion outside of meeting with supervisor/HR." (Doc. 44-8 at 18.)

Plaintiff filed another Concern on July 31, 2009, complaining about unfair treatment regarding the coding of time, Family Medical Leave Act ("FMLA") paperwork, and a credit check and denial of a FamilyLINC account. During an investigation of this Concern, Thompson contended that Plaintiff "has trouble relating and working with managers." (Doc. 44-2 at 41.) In August of 2009, Plaintiff filed a Charge of Discrimination with the EEOC alleging retaliation for reporting discrimination related to his wife's termination.

On September 16, 2009, Plaintiff filed a Concern alleging that he was retaliated against in the administration of a United Way campaign. Immediately after making a contribution, Plaintiff was called by an employee and asked whether he was going to make a contribution. He was under the impression that his participation was voluntary

and confidential. Additionally, his picture was not posted on the United Way bulletin board like other employees.

In late November of 2009, Plaintiff sent emails to Wilder inquiring about payment for "on-call" time worked. (Pla. Depo. 256:9–19.) Team Leads were expected to be "on-call" from time-to-time, and were required to record and report all of the on-call time worked. On November 30, 2009, Wilder requested that Plaintiff submit any on-call time for which he believed he was entitled to pay.

As part of the RIF, Wilder and Hardy met on December 2, 2009, and ranked the Team Leads in three separate categories: "Skills and Abilities," "Job Responsibilities," and "Southern Style." These rankings were on a scale of 1 to 4, with 4 representing Outstanding, 3 representing Acceptable, 2 representing Marginal, and 1 representing Unacceptable. To formulate these rankings, Wilder and Hardy drew upon their knowledge and observation of the Team Leads as well as four documents: the 2008 year-end performance evaluations, the 2009 mid-year performance evaluations, the 2008 year-end Group Feedback spreadsheets, and the 2009 mid-year Group Feedback spreadsheets. Plaintiff received a 4 in "Job Responsibilities," but a 2 in "Skills and Abilities" and "Southern Style." He was the only Team Lead to receive a 2 in any category, and had the lowest average score of all

the Team Leads. After formulating their rankings, Hardy and Wilder selected Plaintiff

for termination. He was informed of their decision on December 4, 2009. On May 26,

2010, Plaintiff amended his original EEOC charge to include retaliation for filing the

EEOC charge and reporting on-call concerns.

On December 2, 2011, Plaintiff filed the current action, and on January 31, 2012,

he amended his complaint, alleging retaliation under the FLSA, Title VII, and § 1981;

race discrimination under § 1981; and sex discrimination under Title VII. (Doc. 4.) On

Plaintiff's motion, the Court dismissed his discrimination claims following discovery.

(Docs. 31, 32.) Thereafter, SouthernLINC filed its Motion for Summary Judgment.

(Doc. 38.) Both parties subsequently filed Motions to Strike the other party's evidence

in support of their summary judgment briefs. (Docs. 43, 48.)

III.   Motions to Strike

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from

a pleading an insufficient defense or any redundant, immaterial, impertinent, or

scandalous matter." Fed. R. Civ. P. 12(f). The law is not entirely clear on whether a

court has broad powers to strike evidence or other non-pleadings, or if a court's power

to strike is limited by Rule 12(f) to the pleadings. *Compare Reese v. Herbert*, 527 F.3d

1253, 1265, 1274 (11th Cir. 2008) (affirming district court's grant of a motion to strike

an affidavit), *with Polite v. Dougherty Cnty. Sch. Sys.*, 314 F. App'x 180, 184 n.7 (11th Cir. 2008) ("motions to strike are only appropriately addressed towards matters contained in the pleadings").

Some courts "have noted that evidence submitted in support of motions or pleadings may be 'challenged by motions to strike because the Federal Rules provide no other means to contest [its] sufficiency.'" *Morris v. Precoat Metals*, 2013 WL 830868, *2 (N.D. Ala. March 4, 2013) (quoting *Anderson v. Ga. Gulf Lake Charles, LLC*, 2008 WL 919716, *1 (W.D. La. Apr. 4, 2008)). Other courts have determined that "[t]he correct approach is to object to an opposing party's factual assertion on the ground that it 'cannot be presented in a form that would be admissible in evidence.'" *Norris v. GKN Westland Aerospace, Inc.*, 2013 WL 440755, *1 (M.D. Ala. Feb. 5, 2013) (quoting Fed. R. Civ. P. 56(c)(2)). When a court applying the latter approach is presented with a motion to strike material outside the pleadings, it "will construe this motion as a notice of objection." *Id.*

"Although the form of the [motion to strike] is not grounded in a federal procedural rule, the substance of the motion[] will be considered." *Stuckey v. Alabama Bd. Of Pardons and Paroles*, 2012 WL 3670644, *1 n.2 (M.D. Ala. Aug. 27, 2012). In deciding SouthernLINC's Motion for Summary Judgment, the Court may consider

the substance of the parties' Motions to Strike and related submissions without actually striking the evidence submitted by the parties in supporting or opposing summary judgment. "Only evidence that is admissible on its face or that can be reduced to admissible form and that complies with Federal Rule of Civil Procedure 56(e) will be considered in deciding a motion for summary judgment." *Id.* For this reason, Plaintiff's Motion to Strike and SouthernLINC's Motion to Strike are due to be denied; however, the Court will consider the substance of the motions and related submissions in deciding SouthernLINC's Motion for Summary Judgment.[2]

IV.    Motion for Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which

---

[2] SouthernLINC also argues that Plaintiff's responsive brief does not comply with this Court's Uniform Initial Order (Doc. 9), because the entire statement of facts is single spaced. Although this is true, SouthernLINC was given an additional ten pages in its reply brief, and formatted its response to Plaintiff's statement of facts similarly. Any inequities arising from Plaintiff's failure to comply with the Uniform Initial Order was alleviated by the formatting and page-limit extension of SouthernLINC's reply brief.

it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting

evidence showing that there is no genuine dispute of material fact, or by showing that

the nonmoving party has failed to present evidence in support of some element of its

case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–23.  In

evaluating the arguments of the movant, the court must view the evidence in the light

most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739,

742 (11th Cir. 1996).

      Once the movant has met its burden, Rule 56(e) " requires the nonmoving party

to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers

to interrogatories, and admissions on file,' designate 'specific facts showing that there

is a genuine issue for trial.' "  *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e)).

" A factual dispute is genuine only if a 'reasonable jury could return a verdict for the

nonmoving party.' "  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224

(11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428,

1437 (11th Cir. 1991)).

V.     Discussion

      Plaintiff's retaliation claims are based upon his termination after allegedly

complaining to SouthernLINC about discrimination and retaliation. Retaliation against an employee who engages in statutorily protected activity is barred under Title VII, § 1981, and the FLSA. *See Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1257–58 (11th Cir. 2012); 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 215(a)(3). A plaintiff may prove retaliation by relying on either direct, circumstantial, or statistical evidence. *See Walker v. Nationsbank of Florida N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995).

Because Plaintiff is relying exclusively on circumstantial evidence, the burden of proof is governed by the *McDonnell-Douglas* framework. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (Title VII and § 1981); *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342–43 (11th Cir. 2000) (retaliation under the FLSA). The *McDonnell-Douglas* framework first "requires the plaintiff to create an inference of [retaliation] through [his] *prima facie* case." *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the employer meets this burden, the plaintiff must show that the proffered reasons were pretextual. *St. Mary's Honor Center v. Hicks*,

509 U.S. 502, 511 (1993).

SouthernLINC maintains that it is entitled to summary judgment because Plaintiff cannot establish a *prima facie* case of retaliation, Plaintiff cannot simultaneously maintain Title VII and FLSA retaliation claims, and SouthernLINC has a legitimate, non-retaliatory reason for terminating Plaintiff. Plaintiff responds that SouthernLINC is not entitled to summary judgment because he can establish his *prima facie* case, and SouthernLINC's proffered legitimate, non-retaliatory reason for terminating Plaintiff is pretextual.

A.   *Prima Facie* Case

1.   Retaliation Under Title VII and § 1981

" A plaintiff establishes a *prima facie* case of retaliation [under Title VII and § 1981] by showing that: (1) [he] 'engaged in statutorily protected activity'; (2) [he] 'suffered a materially adverse action'; and (3) 'there was a causal connection between the protected activity and the adverse action.'" *Gate Gourmet*, 683 F.3d at 1258 (citing *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010)) (emphasis added). SouthernLINC argues that Plaintiff cannot show that he engaged in statutorily protected activity under Title VII and § 1981, and that, even if he did, he cannot show that this activity caused him to be fired.

a.    Statutorily Protected Activity

The Eleventh Circuit has described protected activity under Title VII as

follows:

> Title VII's retaliation provisions do protect certain kinds of activity. Under the opposition clause, an employer may not retaliate against an employee because the employee " has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3 (a). And, under the participation clause, an employer may not retaliate against an employee because the employee " has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id.* . . .
>
> The participation clause covers participation in " an investigation . . . under this subchapter," that is, an investigation under subchapter VI of Chapter 21 of Title 42 (42 U.S.C. §§ 2000e-2000e-17). 42 U.S.C. § 2000e-3(a). This clause protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC. *See Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978) (stating that participation means " participation in the machinery set up by Title VII to enforce its provisions" ).

*E.E.O.C. v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).

Plaintiff contends that the following activities were protected under Title VII

and § 1981: (1) his Compliance Survey responses; (2) his Concerns filed with

SouthernLINC's Concerns Department on June 24, 2008, July 31, 2009, and

September 16, 2009; and (3) the EEOC charge of Discrimination filed in August of

2009. Here, Plaintiff's filing of the EEOC charge of Discrimination is clearly protected by the participation clause of Title VII's retaliation provisions. However, his Compliance Survey responses and Concerns were part of an internal, in-house investigation conducted apart from a formal charge with the EEOC. Thus, they cannot be protected under the participation clause, but they may be protected under the opposition clause.

To demonstrate that he engaged in a protected activity under the opposition clause, Plaintiff "must show that [he] 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.' " *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir. 2002) (quoting *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). " It . . . is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." *Little*, 103 F.3d at 960. For the purposes of summary judgment, the Court will accept that Plaintiff had a good-faith belief that SouthernLINC was engaged in unlawful employment practices. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1299 (11th Cir. 2012) (in reviewing a grant of summary judgment, the Eleventh Circuit accepts that a plaintiff meets subjective prong of a hostile work environment claim).

Turning to whether Plaintiff's belief was objectively reasonable, discrimination against an employee based on her pregnancy is forbidden by Title VII. *See Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1254–55 (11th Cir. 2012) ("As amended by the Pregnancy Discrimination Act, Title VII prohibits employers from discriminating against employees because of pregnancy."). In order to reasonably believe that his wife was the victim of pregnancy discrimination, Plaintiff must reasonably believe that: "(1) she [was pregnant]; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) employment or disciplinary policies were differently applied to her." *Id.* at 1255. Without having knowledge of the ranking system used by SouthernLINC in selecting a pregnant woman for discharge, a reasonable person could conclude, even if mistaken, that Plaintiff's wife was terminated due her pregnancy, and not a legitimate RIF. Thus, Plaintiff's Compliance Survey responses and his Concern filed on June 24, 2008, are protected by the opposition clause of Title VII's retaliation provisions.

Next, a reasonable person could conclude that Plaintiff was retaliated against for complaining about his wife's termination when he was denied a FamilyLINC account, was given less flexibility in his schedule, was required to provide documents for FMLA leave, was called about participating in the United Way program, and his picture was

not placed on a United Way bulletin board. (Doc. 44-9 at 1; Doc. 44-10 at 1.) SouthernLINC argues that Plaintiff's belief was not objectively reasonable because its employment actions do not amount to "a serious and material change in the terms, conditions, or privileges of employment." *Butler v. Alabama Dept. of Transp.*, 536 F.3d 1209, 1215 (11th Cir. 2008).

However, because Plaintiff complained about retaliation, he only needs to show that a reasonable employee would believe, even if mistaken, that the employer's actions "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006). Such a determination is inherently fact-specific and "depend[s] upon the particular circumstances" of the case. *Id.* at 69. *See also Crawford v. Carroll*, 529 F.3d 961, 973 n.13 (11th Cir. 2008) (noting that *Burlington Northern* "strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions"). A reasonable person could believe that SouthernLINC's actions were an attempt to dissuade Plaintiff from continuing to allege discrimination based on his wife's termination. Thus, Plaintiff's Concerns filed on July 31, 2009, and September 16, 2009, are protected by the opposition clause

of Title VII's retaliation provisions.

                    b.      Causal Connection

The Eleventh Circuit has described the causal connection requirement as

follows:

> We construe the causal link element broadly so that "a plaintiff merely
> has to prove that the protected activity and the . . . [adverse] action are
> not completely unrelated." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457,
> 1460 (11th Cir. 1998). "A plaintiff satisfies this element if [s]he provides
> sufficient evidence" of knowledge of the protected expression and "that
> there was a close temporal proximity between this awareness and the
> adverse ... action." [*Shotz v. City of Plantation, Fla.*, 344 F.3d 1180 n.3
> (11th Cir. 2003)] (quoting *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d
> 1322, 1337 (11th Cir. 1999)). A "close temporal proximity" between the
> protected expression and an adverse action is sufficient circumstantial
> evidence of a causal connection for purposes of a prima facie case. *See
> Olmsted*, 141 F.3d at 1460. We have held that a period as much as one
> month between the protected expression and the adverse action is not
> too protracted. *See* [*Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457
> (11th Cir. 1998)] (citing *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601
> (11th Cir. 1986)).
>
> The Supreme Court has stated that "mere temporal proximity between
> . . . knowledge of protected activity and an adverse . . . action . . . must be
> 'very close.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121
> S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (citations omitted). The Court
> cited with approval decisions in which a three to four month disparity
> was found to be insufficient to show causal connection. *See id.* (citing
> *Richmond v. ONEOK*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period
> insufficient) and *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir.
> 1992) (4-month period insufficient)). If there is a substantial delay
> between the protected expression and the adverse action in the absence
> of other evidence tending to show causation, the complaint of retaliation

> fails as a matter of law. In *Wascura v. City of South Miami*, we held that "Wascura failed to present evidence from which a reasonable jury could find any causal connection between Wascura's notice to the Commissioners in January 1995 of her potential need to take time off to care for her son and her subsequent termination on May 16, 1995." 257 F.3d 1238, 1248 (11th Cir. 2001)

*Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2011). The Supreme Court recently clarified that "a plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

In this case, the evidence demonstrating a causal connection between Plaintiff's complaints and his termination includes Plaintiff's allegation that Hardy "indicated he should not report concerns any longer" in March of 2009 (Doc. 44-9 at 1; Pla. Depo. 365:20–366:10), Thompson's comment that Plaintiff "has trouble relating and working with managers" (Doc. 44-2 at 41), and Thompson's lowering of Plaintiff's 2009 mid-year evaluation rating on behavior from "Fully Met" to "Not Fully Met" while collaborating with Wilder—who was aware of the impending RIF. (Doc. 44-5 at 39, 48.) This evidence shows that Hardy had knowledge of Plaintiff's complaints and an opportunity to affect Plaintiff's RIF ranking. Further, there is enough evidence to infer that Hardy harbored a retaliatory animus towards Plaintiff, causing him to be

terminated. This is sufficient to demonstrate that Plaintiff's complaints and his termination are not completely unrelated.

Further, there is sufficient evidence to assume for the purposes of this ruling that Plaintiff's complaints were the but-for cause of his termination. SouthernLINC argues that it had to select one Team Lead for termination as part of its RIF, and none of the documents Wilder and Hardy considered—aside from the 2009 mid-year performance evaluation—could have been tainted by a retaliatory motive. (Doc. 53 at 4.) Regardless of whether this is true, Wilder and Hardy used a holistic approach to assign the rankings, so the 2009 mid-year performance evaluation was considered, as was Wilder and Hardy's "knowledge and observation of the Team Leads." (Doc. 39, ¶ 22.) A reasonable person could infer that Plaintiff would have received a higher ranking in the "Skills and Abilities" and "Southern Style" categories if Plaintiff had not made any complaints protected under Title VII. A single bump in the rankings in either category would have brought Plaintiff's overall score at or above the overall score for the other Team Leads. Thus, there is sufficient evidence of but-for causation to survive a motion for summary judgment.

Finally, even if there was no evidence of a causal connection, there is an effective chain of protected activity that connects Plaintiff's earlier complaints with

his complaints about on-call time such that " a fact-finder may reasonably infer that it was the aggregate of the protected activities that led to retaliatory dismissal." *San Filippo v. Bongiovanni*, 30 F.3d 424 (3d Cir. 1994). Accordingly, Plaintiff has produced sufficient evidence to establish a *prima facie* case of retaliation in violation of Title VII and § 1981.

### 2.   Retaliation Under FLSA

" A *prima facie* case of FLSA retaliation requires a demonstration by the plaintiff of the following: '(1) [he] engaged in activity protected under [the] act; (2) [he] subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action.' " *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342–43 (11th Cir. 2000) (quoting *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208–09 (10th Cir. 1997)) (emphasis added). SouthernLINC argues that Plaintiff cannot demonstrate that a causal connection existed between his FLSA protected complaints and his termination, and that, even if he did, he cannot argue both Title VII or § 1981 retaliation and FLSA retaliation.

### a.   Causal Connection

To establish a causal connection, Plaintiff may show that the decision maker was aware of the protected activity and that there is " a close temporal proximity between

this awareness and the adverse . . . action." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). However, "mere temporal proximity, without more, must be 'very close.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2008) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Furthermore, "[e]mployers need not suspend previously planned [adverse employment actions] upon discovering [protected activity]." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (holding that if, after discovering protected activity, employers proceed "along lines previously contemplated, though not definitively determined," their actions are not evidence of causality).

In this case, the only FLSA-protected complaint Plaintiff made was his emails to Wilder in late November of 2009, inquiring about payment for on-call time worked. (Pla. Depo. 256:9–19.) Two days later, Wilder and Hardy created the RIF rankings. (Wilder Decl. ¶ 8, Hardy Decl. ¶ 39.) Two days is sufficiently close to establish a causal connection. *See Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986) ("The short period of time [(one month)] between the [protected activity] and the [adverse employment action] belies any assertion by the defendant that the plaintiff failed to prove causation.").

SouthernLINC argues that the RIF was already planned at the time Plaintiff

complained about on-call time, thus, his termination is not evidence of causality. However, SouthernLINC had not contemplated terminating Plaintiff specifically, nor had it formulated its rankings. Plaintiff's complaints about on-call time certainly could have influenced Wilder and Hardy's ranking assignments, given their close temporal proximity and Wilder and Hardy's awareness thereof. Moreover, Plaintiff has presented sufficient evidence from which a reasonable jury could infer that Hardy harbored a retaliatory animus towards Plaintiff for filing complaints. This is enough to show that Plaintiff's complaint about on-call time and his termination were not completely unrelated. Thus, a causal connection has been established, and Plaintiff has produced sufficient evidence to establish a *prima facie* case of retaliation in violation of the FLSA.

    b.  Simultaneous Claims Under the FLSA and Title VII

    SouthernLINC argues that the FLSA requires but-for causation similar to the ADEA in asserting a retaliation claim, and Plaintiff cannot simultaneously assert a Title VII and FLSA retaliation claim. *See Culver v. Birmingham Bd. Of Educ.*, 646 F. Supp. 2d 1270, 1271–72 (N.D. Ala. 2009) ("an employee cannot claim that age is a motive for the employer's adverse conduct and simultaneously claim that there was any other proscribed motive involved"). Regardless of whether any of Plaintiff's

claims require but-for causation, he may certainly maintain alterative, inconsistent theories. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.") It would be inappropriate for this Court to grant summary judgment against Plaintiff on his FLSA retaliation claim because he cannot recover under both FLSA and Title VII retaliation.

B.     Legitimate, Non-Retaliatory Reasons

Because Plaintiff has met his burden of demonstrating a *prima facie* case, the burden shifts to SouthernLINC to articulate a legitimate, non-retaliatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 253. SouthernLINC contends that it "had to eliminate one Team Lead position as part of a RIF and [Plaintiff] was selected as the weakest Team Lead based on legitimate, non-retaliatory criteria." (Doc. 39 at 35.) Accordingly, SouthernLINC has articulated a legitimate, non-discriminatory reason for terminating Plaintiff, and Plaintiff must now show that the proffered reason was pretextual. *Hicks*, 509 U.S. at 511.

C.     Pretext

To establish pretext, Plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision" and may demonstrate this either "directly by persuading the court that a [retaliatory] reason more likely motivated the

employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Burdine*, 450 U.S. at 256). When determining whether SouthernLINC's proffered reason for constructively discharging Plaintiff was pretextual, it is the motive of the decisionmaker—Hardy and Wilder in this case—in discharging Plaintiff that is at issue. *See Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989).

Resolving all factual disputes in favor of Plaintiff, Hardy " indicated he should not report concerns any longer" in March of 2009. (Doc. 44-9 at 1; Pla. Depo. 365:20–366:10.) Despite this, Plaintiff reported concerns in July and September of 2009, filed an EEOC charge in August of 2009, and complained about on-call time just days before Hardy and Wilder created the RIF rankings. A reasonable jury could infer that Hardy harbored a retaliatory animus towards Plaintiff for filing complaints. Given the change in Plaintiff's 2009 mid-year evaluation and his difficulty with management, there is sufficient evidence to find that Hardy purposefully lowered Plaintiff's ranking and used the 2009 mid-year evaluation rating on behavior as pretext for Plaintiff's RIF selection. Accordingly, Plaintiff has met his burden of demonstrating that SouthernLINC's proffered reason for Plaintiff's termination was pretextual.

VI.    Conclusion

For the aforementioned reasons, Plaintiff's Motion to Strike is due to be DENIED. SouthernLINC's Motion to Strike is due to be DENIED. SouthernLINC's Motion for Summary Judgment is due to be DENIED. A separate order consistent with this opinion will be entered.

Done this 5th day of August 2013.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

171032